# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DERRICK WENZEL SIMMONS** | * | |
| Petitioner | * | |
| v. | * | Civil No. PJM 18-598 |
| | * | (Related to Criminal No. PJM 15-376-2) |
| **UNITED STATES OF AMERICA** | * | |
| Respondent | * | |

## MEMORANDUM OPINION

Derrick Simmons, *pro se*, has filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 131) and a further Motion styled "Motion for Disposition on the Merits of Pending Action" (ECF No. 162). The Court has considered the Motions and the Government's Opposition to same. For the reasons that follow, the Court **DENIES** Simmons' Motion to Vacate. His Motion for Disposition on the Merits, whatever that is intended to be, is **MOOT**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 6, 2015, Simmons was charged by indictment with being a Felon in Possession of a Firearm. ECF No. 12. The charge also constituted a violation of conditions of the Supervised Release that Simmons was on at the time for a separate offense. *See* ECF No. 55 at 1 (Plea Agreement). A key fact of the Felon in Possession case was that Simmons was arrested while sitting in a car that had been stolen the night before. *Id.* at 9.

On June 3, 2016, Simmons entered a guilty plea and admitted the violation. ECF No. 86 at 15, 9-11. His Plea Agreement, filed with the Court on June 6, 2016, included a "Factual and Advisory Guidelines Stipulation." ECF No. 55 at 4. That section explained that if Simmons

1

obtained a three-level reduction for acceptance of responsibility, which he ultimately did, the final offense level would be "either **17** ([the Government's] position) or **13** (the Defendant's position)." *Id.* at 5 (emphasis in original). The discrepancy between the possible offense levels depended on whether there would be a 4-level increase in the offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B) based on the firearm's use in connection with another felony offense, *id*, namely, the unauthorized use of a motor vehicle and/or theft of the motor vehicle. ECF No. 66 at 4 (Government's Sentencing Memorandum). The Government took the position that the increase applied, Simmons disagreed. The Plea Agreement included a waiver of appeal by which the Government was barred from appealing any outcome other than a sentence below the guidelines minimum for an offense level of 13 and Simmons was barred from appealing for any reason other than a sentence above the guidelines maximum for an offense level of 17. ECF No. 55 at 6.[1]

Both Simmons and his attorney signed the Plea Agreement. ECF No. 55 at 8. Simmons specifically averred under oath that "I have read this agreement… and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney." *Id.*

During the plea colloquy, Simmons re-confirmed under oath that he had reviewed the Agreement with his attorney and that his attorney had explained it to him. *Id.* at 14-15. The Government then recited the basic terms of the Agreement, including that the maximum sentence the Court could impose for the charge would be ten years imprisonment and that the final offense level would be 13 or 17, depending on the applicability of the disputed enhancement. *Id.* at 16-19. Simmons acknowledged that the Government's recitation was accurate. *Id.* at 20. Simmons also

---

[1] The parties stipulated and agreed that Simmons' criminal history category was IV, based on a Pre-Plea Criminal History Report. ECF No. 55 at 5.

confirmed that he had discussed the sentencing guidelines with his attorney, *id.* at 22, and stated that he understood he would not be able to withdraw his plea simply because he did not like the Court's decision about which guideline range applied to him. *Id.* at 23.

On September 1, 2016 the Court proceeded to sentencing. ECF No. 69. Based on the parties' arguments, sentencing memoranda, and the Pre-Sentence Report (PSR), the Court determined that the four-level enhancement advocated by the Government applied, making Simmons' total offense level 17. ECF No. 85 at 18, 19. Because Simmons' criminal history category was determined to be IV, the guideline range for custody was 37 to 46 months. *Id.* at 19. A guidelines sentence of 12 to 18 months on the violation of Supervised Release was to run consecutively. *Id.*

Once the guideline range was determined, however, the Government asked the Court to impose an upward variance sentence of 120 months—the statutory maximum for the charge—based on the circumstances of the charged offense and Simmons' extensive criminal history. *Id.* at 20-23. Simmons argued that a sentence within the guideline range was appropriate, especially given the extenuating circumstance that he was shot several times during his apprehension for the instant offense, which has caused lingering medical complications. *Id.* at 29. The Court ultimately sentenced Simmons to 108 months imprisonment on the Felon in Possession charge, followed by 12 months consecutive time for his violation of Supervised Release, a total of 120 months. ECF No. 85 at 38-39.

On September 12, 2016, Simmons filed a notice of appeal. ECF No. 75. On August 11, 2017, the Fourth Circuit affirmed the Court's judgment. ECF No. 101.

This Motion to Vacate followed.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, an incarcerated person in federal custody may file a motion challenging the legality of his sentence on one or more of the following grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a).

However, post-conviction collateral attack is not a substitute for direct appeal. Before the Court can reach the merits of such a challenge, the movant must overcome certain procedural hurdles. One hurdle is the procedural default rule. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 168-70 (1982). A claim which could have been but was not raised on a petitioner's direct appeal may not be raised in a § 2255 motion unless the petitioner (a) demonstrates cause for the failure to raise the claim on direct appeal, and (b) actual prejudice resulted from the error. *Id.* "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999). The standard for prejudice is that the alleged error that led to the issue not being brought on appeal worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Likewise, a petitioner cannot re-raise arguments in a habeas petition that were already raised on direct appeal. *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring), *United States v. Linder*, 522 F.3d 391, 396-97 (4th Cir. 2009).

## III. ANALYSIS

Simmons makes essentially four arguments in support of his Motion to Vacate: (1) that counsel was ineffective in failing to inform him that a four-level enhancement in his offense level under the sentencing guidelines was possible, especially for conduct that was not actually charged; (2) that counsel was ineffective in failing to inform him that he could receive a sentence above the guidelines range; and (3) that counsel unreasonably declined to file a Motion to permit Simmons to withdraw his plea. Simmons also appears to add one more claim: (4) that the Government breached its agreement to recommend a "reasonable" sentence, in part because the Plea Agreement was negotiated with a different prosecutor than the AUSA who appeared at the sentencing hearing.

### A. *Ineffective Assistance of Counsel Claims*

To prevail on a claim of ineffective assistance of counsel, a petitioner must establish (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defendant. To establish deficient performance, the person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness, and was not merely below average. *Strickland v. Washington*, 466 U.S. 668 (1984); *Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985). To show prejudice, the challenger must demonstrate a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different, i.e., in this case, that Simmons would not have accepted the plea deal. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* A petitioner bringing an ineffective assistance claim under § 2255 bears the burden of proving his allegation by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898 (4th Cir. 1967).

Simmons claims counsel was ineffective: First, for not informing him about the possibility of receiving an enhancement in his sentencing calculation; Second, for failing to inform Simmons

5

that he could receive a sentence above the high end of the calculated guidelines range; and Third, for refusing to seek to withdraw Simmons' plea after it became clear that the Government was recommending a much higher sentence than Simmons expected.

As to Simmons' first point, he has not offered any evidence, much less a preponderance of evidence, in support of his claim that counsel's representation was deficient by failing to inform him about the possibility of the disputed 4-level enhancement in his offense level. His only "evidence" to that effect is Simmons' own assertion in his Declaration, attached to his Reply, that he was never informed about the possibility of receiving any enhancements to his sentence under the sentencing guidelines. ECF No. 160 at 10, ¶ 2 ("Of the conversations I had with my Defense Counsel regarding the case leading up to the Sentence Hearing and thereafter, I was never informed about the possibility of receiving any enhancements to my sentence under the United States Sentencing Guidelines, specifically the enhancement(s) sought by the Government, U.S.S.G. §§ 2K2.1(b)(6)(B) [four level increase because the firearm was used in connection with another felony offense] and (b)(4)(A) [two level increase because the firearm was stolen].... I can candidly say that I was not informed about the possibility of receiving an enhancement(s) prior to accepting the plea agreement."). What Simmons says is flatly untrue.

He signed the Plea Agreement, which explained in the section denominated "Factual and Guidelines Stipulation Section" that the Government's position was that a 4-level enhancement for the use of a firearm in connection with another felony offense should apply to Simmons. ECF No. 55 at 4. The separate calculation in the Plea Agreement that 2-levels should be added to Simmons' offense level because the firearm was stolen was not contested. *See* ECF No. 55 at 4. Not only did Simmons sign the Plea Agreement; again, he signed it directly under a statement saying "Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my

attorney, and I do not wish to change any part of it," *Id.* at 8, thereby acknowledging that he was well aware of the possible 4-level enhancement, and that he had done so after discussing the matter with his attorney. During the plea colloquy, Simmons orally re-affirmed that he agreed with the Government's recitation of the terms of the Plea Agreement. His late-conceived declaration to the contrary cannot stand against the evidence of the Plea Agreement and the plea colloquy.

Simmons next claims, in addition to not knowing his guidelines range could be subject to enhancements before he entered his plea, that he did not realize he could receive a sentence above the calculated guidelines range of 37 to 46 months—i.e., he did not know a sentence up to the statutory maximum of 120 months was possible. ECF No. 160 at 10, ¶ 4 ("I can candidly say that had I known about the possibility of receiving a sentence greater than what was recommended by the PSR; and, the fact that the plea agreement exposed me to receiving an enhanced sentence for a charge not listed in the plea agreement, I would not have accepted the plea agreement…"). Again, the Plea Agreement and the plea colloquy totally undercut that assertion.

In the Plea Agreement, an entire section titled "Court Not a Party" details that "[t]he Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court." That section of the Agreement further explains that the Court is not obliged to accept any recommendations by the Government or any other party. ECF No. 55 at 7. During the plea colloquy, the Court reviewed this stipulation with Simmons. ECF No. 86 at 21 (Transcript of Guilty Plea) (Simmons confirming that he understood that "the Court is not bound by either" recommendation as to the sentence for the Felon in Possession charge or the sentence for the violation of conditions of Supervised Release, and that he understood the Court could "sentence [him] to the maximum provided by

7

Statute"). Simmons' latter-day assertion to the contrary is simply unacceptable. Under oath, in writing and orally, he asserted he understood his exposure at the time he pled guilty.

Finally, Simmons suggests that his attorney was ineffective for ignoring Simmons' request to withdraw his plea once he learned that the Government was seeking a 120-month sentence. Even if that were true, he cannot show that he was prejudiced.

To show prejudice, a defendant must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. In the first place, as the Court has just indicated, Simmons was fully aware of his possible exposure to a sentence of up to 120 months. Beyond that, any requested withdrawal of his plea would not have been accepted by the Court. After a court accepts a guilty plea but before sentencing, a defendant can only withdraw his plea if the court rejects a plea agreement under Rule 11(c)(5) or if the defendant can show a fair and just reason for requesting the withdrawal. Fed. R Crim. P. 11(d)(2). "The most important consideration in resolving a motion to withdraw a guilty plea is an evaluation of the Rule 11 colloquy at which the guilty plea was accepted." *United States v. Nicholson*, 676 F.3d 376, 384 (4th Cir. 2012).

Although Simmons avers that his lawyer told him the Court "always accepts recommendations of the Probation Department unless evidence is discovered prior to sentencing that warrants new charges," ECF No. 160 at 10 ¶ 3, Simmons orally affirmed under oath at his rearraignment that he understood, as far as his possible exposure to a greater than guidelines sentence, that the Court was not bound by any recommendation by anyone, and—especially on point—that no person had made any promises to him about the sentence the Court would impose. ECF No. 86 at 29. "Such a Rule 11 colloquy raises a strong presumption that the plea is final and binding," making it unlikely that merely a longer sentence than expected would have moved the

Court to allow Simmons to withdraw his plea. *United States v. Harrison*, 659 Fed.Appx. 166, 167 (4th Cir. Sept. 1, 2016).

### *B. Breach of Plea Agreement Claim*

Simmons further argues that the Government breached its agreement to recommend a "reasonable" sentence when it recommended a 120-month sentence on the Felon in Possession charge. He also argues, as the Court understands it, that the Agreement was breached because the AUSA who dealt with defense counsel in negotiating the plea necessarily had a different understanding of "reasonableness" than the different AUSA who appeared at the sentencing phase.

As an initial matter, Simmons is procedurally defaulted on this claim because he did not raise it on direct appeal. *See generally* Brief of Appellant, *United States v. Simmons*, 694 Fed.Appx. 925 (4th Cir. 2017), Dkt. No. 3. That is, Simmons would have been aware of the purported breach as soon as the U.S. Attorney's Office, before the sentencing, submitted its sentencing memo and certainly by the time of the sentencing hearing, both of which events occurred before Simmons filed his appeal. As such, he is barred from asserting this claim in his Motion to Vacate, unless Simmons can show either cause and prejudice or actual innocence. *See United States v. Frady*, 456 U.S. 152, 168 (1982). But he has shown neither. He does not even mention cause or prejudice. *See generally* Mot. to Vacate, ECF No. 131.

That said, even if Simmons were not precluded from raising this claim in the present § 2255 Motion to Vacate, the Government cannot be deemed to have breached the Plea Agreement. A "defendant alleging the Government's breach of a plea agreement bears the burden of establishing that breach by a preponderance of the evidence." *United States v. Snow*, 234 F.3d 187, 189 (4th Cir. 2000). Courts "will not hold the Government to promises that it did not actually make in the

9

plea agreement." *United States v. Obey*, 790 F.3d 545, 547 (4th Cir. 2015). In the Plea Agreement, the Government promised only that "[a]t the time of sentencing, this Office will recommend a reasonable sentence." ECF No. 55 at 4. The Government ended up arguing for a 120-month sentence, the statutory maximum for the offense of Felon in Possession, which was always a possible outcome. And in fact the Court did not fully accept the Government's argument; it sentenced Simmons to 108 months on the Felon in Possession charge (plus 12 months consecutive for the violation of Supervised Release).[2] The Court explained its reasons for the decision at the sentencing hearing, recounting Simmons' ample history of unauthorized use of firearms, the circumstances of the offense at issue, and Simmons' previously demonstrated lack of rehabilitation. *See* ECF No. 85 (Transcript of Sentencing) at 34-36.[3] On appeal, the Fourth Circuit upheld the reasonableness of the sentence. There is no basis for the Court to revisit the issue now via a collateral proceeding.

## IV. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2255 cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*,

---

[2] Simmons does not challenge any aspect of the 12-month sentence for the violation of conditions of his release. ECF No. 131-1 at 1.
[3] Simmons appealed the sentence, arguing it was unreasonable. The Fourth Circuit upheld the sentence, saying it was not an abuse of discretion for all the reasons the Court had given to justify the imposition of a sentence well above the guideline range. ECF No. 101.

10

529 U.S. 473, 484 (2000). The Court has considered the entire record and finds that Simmons has not made the requisite showing here.

## V. CONCLUSION

For the foregoing reasons, Simmons' Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 131) is **DENIED.** His Motion for Disposition on the Merits (ECF No. 162) is **MOOT.**

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 21, 2019